UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

TYRONE REYES,

        Plaintiff,

v.

CARMEN PALMER et al.,

        Defendants.

_____/

Case No. 1:17-cv-755

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Palmer, Schooley, and Unknown Party. The Court also will dismiss for failure to state a claim Plaintiff's retaliation claim against Defendant Stewart, as well as his claimed violations of due process, the Eighth Amendment, and the PREA. The Court will serve the complaint against Defendants King, Martin, and Stewart.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. The events about which he complains, however, occurred at the Michigan Reformatory (RMI) in Ionia, Ionia County, Michigan. Plaintiff sues the following RMI officials: Warden Carmen Palmer, Deputy Warden (unknown) Schooley, Captain (unknown) King, Lieutenant (unknown) Martin, Unknown Party (named as Sergeant Doe), and Unknown Stewart.

Plaintiff alleges that, on December 26, 2015, he went to dinner in the chow hall, proceeded through the food line, and received his dinner tray. However, when he sat down, he noticed that he had no eating utensil. Plaintiff got up to get a spork, but Defendant Stewart stopped him and asked what he was doing. Plaintiff explained that he either was not given or may have dropped his eating utensil. Stewart ordered Plaintiff to come over for a shakedown, to make sure that Plaintiff was not trying to steal a set of utensils. Plaintiff responded, "I have no reason to steal anything from the chow hall." (Compl., ECF No. 1, PageID.11.)

Plaintiff contends that Defendant Stewart searched him roughly, and Plaintiff started to get upset. When searching Plaintiff's first leg, Stewart allegedly touched Plaintiff's testicle roughly. Plaintiff complained, saying, "can't you be a little more easier, and watch where you're touching me?" (*Id.*) After hearing Plaintiff's question, Defendant Stewart allegedly became even rougher in his search of the other leg, this time squeezing Plaintiff's testicles.

After Stewart finished the search, Plaintiff walked toward the chow line to get his spork. Defendant Martin, who had been watching Plaintiff's interaction with Stewart, walked up to Plaintiff and asked if he had a problem with the officer shaking him down. Plaintiff responded,

"No, but I do have a problem with your officer squeezing my gonad area." (*Id.*) Defendant Martin replied, "If you have a problem with my officer shaking you down, you can leave the chow hall." (*Id.*) Plaintiff remained silent. When Plaintiff made no response, Defendant Martin repeated his statement and asked Plaintiff if he had a problem. Plaintiff again stood silent. Defendant Martin told Plaintiff that he was talking to him and ordered Plaintiff to answer. Plaintiff responded that he had already told Martin that Defendant Stewart had sexually assaulted him during the shakedown.

After making his statement, Plaintiff began to walk away to get his eating utensil. Lt. Martin ordered Plaintiff to stop, because he was not finished talking to Plaintiff. Plaintiff responded that he was finished talking and just wanted his spork so that he could eat his meal before it was cold. At that point, Defendant Martin stated, "Since you have a problem with my officer shaking you down, you can leave the chow hall now." (*Id.*, PageID.12.) Plaintiff asked, "[S]o you're going to deny me a meal, because I told you that Officer Steward grabbed my gonad?" (*Id.*) Lt. Martin responded, "YES I AM!" (*Id.*)

Plaintiff returned back to his cell without dinner, and he promptly began to write a grievance against Defendants Martin and Stewart. He claims that he was so upset, however, that he got some of the details of his grievance wrong. He filed the grievance on December 28, 2015. Plantiff thereafter received notice that the grievance may fall under the scope of the Prison Rape Elimination Act (PREA), and it therefore had been referred for investigation and determination of the possible violation.

Defendant Captain King reviewed the grievance and conducted an investigation under the PREA. As he reported in the Step I grievance response, King reviewed the video footage of December 26, 2015, between 7:00 and 7:15 p.m., and interviewed Defendants Stewart and

3

Martin, as well as another officer. (Ex. C to Compl., ECF No. 1-1, PageID.32.) King found that Plaintiff was pictured leaving his seat in the chow hall, being stopped by Stewart, and being patted down by Stewart. Nothing untoward was visible on the video, and Plaintiff did not appear to react to any part of the search. Plaintiff proceeded to the chow line, where he was stopped by Defendant Martin. During the conversation with Martin, Plaintiff appeared to become upset and subsequently left the chow hall. (*Id.*)

After conducting an investigation, King concluded that Plaintiff's grievance was unsubstantiated and denied the grievance on February 1, 2016. (*Id.*, PageID.32-33.) That same date, King wrote a Class II misconduct against Plaintiff, charging him with interference with the administration of rules for filing a false claim against a staff member. At the initial review of the misconduct charge, Plaintiff claimed that the date of the incident listed on his grievance was wrong, and therefore Defendant King had reviewed the wrong videotape. Having heard Plaintiff's information about the mistaken date, Sgt. John Doe (Defendant Unknown Party) advised Plaintiff that he should beat the misconduct ticket because the body of the ticket was wrong.

Plaintiff was called out for a hearing with Defendant Martin the next day. Plaintiff objected to Defendant Martin hearing the misconduct charge, because Martin was involved in the subject matter and because Plaintiff had filed a grievance against Martin, rendering Martin biased. Defendant Martin nevertheless insisted on presiding over the hearing. When Plaintiff revealed that the body of the ticket was wrong, Martin postponed the hearing. On February 4, 2016, Martin reheld the hearing, over Plaintiff's objection that Martin was violating his right to due process. Defendant Martin revealed that he had talked to Defendant King about the typographical error in the date of the incident. But Martin said that he was nevertheless going to find Plaintiff guilty for lying about an officer. He sanctioned Plaintiff to 5 days' toplock and 30 days' loss of privileges.

4

As a result of the guilty determination, Plaintiff wrote a grievance against Defendants King and Martin for staff corruption in denying him due process.

Plaintiff appealed his misconduct conviction to the deputy warden's office. When the office failed to respond for 30 days, Plaintiff wrote another grievance, alleging staff corruption for the failure to follow administrative rules. Plaintiff pursued all of his grievances to Step III. In addition, on March 13, 2016, Plaintiff wrote a letter to Warden Palmer, outlining the events that had taken place in the chow hall and in the PREA investigation. On March 30, 2016, Plaintiff wrote a grievance on the deputy warden for refusing to respond to his misconduct appeal. On June 22, he received his Step III response refusing to hear his appeal.

Plaintiff also complains that Defendant King told a correctional officer to remove Plaintiff from his position as a block representative before Plaintiff had been found guilty of the misconduct charge. Toward the end of the grievance process, Plaintiff informed Defendant Schooley that he had been denied due process by Defendant Martin's decision to preside over the misconduct. Defendant Schooley responded that Defendant Martin had improperly reviewed the misconduct, but he asked Plaintiff why he had not spoken with Schooley sooner. Plaintiff responded that he had been told not to talk to anyone under the PREA standards.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

5

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.   Supervisory Liability

Plaintiff's only allegations against Defendants Palmer and Schooley are that they failed to take action on his grievances and, arguably, failed to supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Palmer or Schooley engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

B.   Due Process

Plaintiff alleges that Defendant Martin improperly reviewed the misconduct charge against Plaintiff that was filed by Defendant King, because Defendant Martin was involved in the incident that led to the misconduct charge. Plaintiff asserts that Martin's review of the misconduct charge violated Plaintiff's rights under MDOC policy and the Due Process Clause. In addition, Plaintiff alleges that Defendant King violated his right to due process when he ordered Plaintiff

removed from the Warden's Forum before Plaintiff had been found guilty of the misconduct charge.

Defendant Martin's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff's claim that he was deprived of procedural due process in the resolution of the misconduct charge is meritless. A prisoner's ability to challenge a prison misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *See* MICH. DEP'T OF CORR., Policy Directive 03.03.105, ¶ AAAA. Therefore, contrary to the assertion in his complaint, Plaintiff should not have been denied good time or disciplinary credits as a result

8

of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II misconduct conviction.

Finally, Plaintiff fails to allege a due process violation based on King's order to remove Plaintiff from the Warden's Forum prior to Plaintiff's conviction on the misconduct charge. Plaintiff , has no protected liberty interest in his position on the Warden's Forum. *See Miller v. Berghuis*, 2013 WL 8445625 *2 (W.D. Mich. 2013); *Reeves v. Chapman*, 2011 WL 2518843, *2 (E.D. Mich. 2011); *see also Newsom v. Norris*, 888 F2d 371, 374 (6th Cir. 1989) (finding no liberty interest in continued appointment to position of inmate adviser); *VanDiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) (inmate "has no liberty or property interest in his position . . . on the warden's forum"); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *1 (6th Cir. June 23, 2000) (inmate "had no constitutional right to hold the position of block or prisoner representative."). Plaintiff therefore was not entitled to due process prior to his termination from the Warden's Forum.

C. Retaliation

Plaintiff alleges that Defendants Martin and Stewart retaliated against him for filing grievances, by subjecting him to a harsh and sexually abusive search and depriving him of his meal. Plaintiff also alleges that Defendants generally retaliated against him by not finding in his favor on his grievances. Further, he contends that Defendants King and Martin retaliated against

9

him by filing and upholding a misconduct charge solely because Plaintiff had filed a grievance about being sexually abused.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that, because he entered prison as a minor in 1998, he was exposed in his early years to harassment and sexual intimidation by both inmates and staff alike. As a result, Plaintiff has since become an advocate for prisoners who were convicted as minors, for which he has been exposed to additional harassment by unspecified staff members. He contends that his protected conduct as an advocate was the motivation for Defendant Stewart's sexually inappropriate search.

The Sixth Circuit has held that there exists a constitutional right not to be retaliated against for having filed a nonfrivolous grievance. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). However, a prisoner does not have an independent right to help others with their legal claims and grievances. *Id.* at 415-16. It therefore is not at all clear that Plaintiff engaged in protected conduct. In any event, Plaintiff fails to allege any specifics concerning when he filed grievances and against whom. Instead, Plaintiff's allegation that Defendant Stewart retaliated

against him is wholly conclusory. Moreover, even if Plaintiff was engaged in filing a grievance at the time of the incident, he alleges no facts from which to reasonably infer that Defendant Stewart's actions were motivated by his protected conduct. He merely concludes that because he has filed grievances and served as an advocate in the past, Defendant Stewart's search and Defendant Martin's order to leave the chow hall without a meal must have been motivated by Plaintiff's unspecified grievances and complaints.

"[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). This is especially true where, as here, the plaintiff is a prolific filer of grievances. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges Defendants' conduct followed Plaintiff's unspecified grievances and advocacy. Such allegations are insufficient to state a retaliation claim.

Plaintiff next argues that the remaining Defendants retaliated against him by denying or rejecting his grievances against Defendants Stewart and Martin. Even assuming that Plaintiff has successfully alleged that he was engaged in protected conduct when he filed his grievance and grievance appeals, *but see Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (filing of a *non-frivolous* grievance is protected conduct) (emphasis added), Plaintiff cannot

11

demonstrate that the other Defendants took adverse action against him. Rejection of a grievance does not impair a prisoner's right to bring a lawsuit. *See Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401 (W.D. Mich. May 6, 2015) (holding that the rejection of a grievance is not adverse action); *cf., Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) ("[A]n ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances."); *see also Jackson v. Madery*, 158 F. App'x 656 (6th Cir. 2005) (placement of modified grievance access does not constitute adverse action). Moreover, the rejection of a grievance is itself appealable to all levels of the grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ I ("A grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy."). Finally, "the denial of administrative grievances or the failure to act" does not constitute active conduct that would subject a defendant to liability under § 1983. *Shehee*, 199 F.3d at 300. For all these reasons, the mere denial or rejection of a grievance does not amount to adverse action.

Plaintiff also claims that Defendant Martin ordered Plaintiff out of the chow hall because Plaintiff complained about a sexual assault. The Court concludes that the allegation, while not strong, is sufficient to warrant this claim of retaliation against Defendant Martin. The Court also concludes that Plaintiff has sufficiently alleged that Defendant King retaliated against him for filing a grievance against Defendants Stewart and Martin by issuing a misconduct charge against him. The Court therefore will order service of these retaliation claims against Defendants Martin and King.

D. Eighth Amendment

Although Plaintiff does not expressly claim that Defendant Stewart's search violated the Eighth Amendment, the facts Plaintiff alleges require analysis under the Eighth Amendment. Plaintiff also arguably suggests that Defendant Martin deprived him of his meal in violation of the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). "Routine

discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

1. sexual touching

Plaintiff alleges that Defendant Stewart improperly touched and squeezed Plaintiff's testicles during the conduct of a pat-down search. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19,

1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). In addition, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If Plaintiff's allegations against Defendant Stewart are true, Stewart's conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff alleges that, at best, Defendant Stewart briefly touched him during a single pat-down search. Stewart engaged in no concomitant verbal sexual harassment. The allegations at best demonstrate an isolated instance of minor contact during the course of a search, which does not represent a sufficiently serious use of improper force to be actionable under the Eighth Amendment. *See Solomon*, 478 F. App'x at 320-21; *Jackson*, 158 F. App'x at 661. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Officer Stewart.

2. deprivation of a meal

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v.*

*Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Here, Plaintiff missed only one meal. He does not allege that his health suffered as a result of the deprivation, or that the other meals he did receive were inadequate to sustain his health. Consequently, Plaintiff does not state a plausible claim. *See Iqbal*, 556 U.S. at 679.

E. PREA

To the extent that Plaintiff suggests that Defendants' actions in resolving his complaint of sexual touching violated the PREA, he fails to state a claim. Although the question has not been addressed by the Sixth Circuit, several district courts have found that the PREA "does not create a right of action that is privately enforceable by an individual civil litigant." *Porter v. Louisville Jefferson Cty. Metro Gov't*, No. 3:13CV-923-H, 2014 WL 6883268, at *3 (W.D. Ky. Dec. 5, 2014) (quoting *LeMasters v. Fabian*, Civ. No. 09702, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009), and collecting cases); *see also Hill v. Hickman Cty. Jail*, No. 1:15-cv-71, 2015

WL 5009301, at *3 (M.D. Tenn. Aug. 21, 2015); *Simmons v. Solozano*, No. 3:14CV-P354-H, 2014 WL 4627278, at *4 (W.D. Ky. Sept. 16, 2014).

> The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue. 42 U.S.C. § 15601 et seq. The statute does not grant prisoners any specific rights. In the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision.

*Id.* (quoting *Chinnici v. Edwards*, No. 1:07-cv-229, 2008 WL 3851294, at *3 (D. Vt. Aug.12, 2008) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002))); *see also Hunter v. Palmer*, No. 1:17-cv-109 (W.D. Mich. Apr. 6, 2017).

Like the cited courts, this Court concludes that the PREA creates no private right of action. As a result, to the extent the complaint might be construed as bringing a claim under the PREA, such claim must be dismissed.

### F. Inadequate Allegations

Plaintiff's only allegations against Defendant Sergeant Unknown Party are that, after hearing Plaintiff's description of the error in the misconduct charging document, Defendant Sergeant predicted that the misconduct ticket would be dismissed on review because its content was inaccurate. Plaintiff utterly fails to allege that Defendant Sergeant Unknown Party took any action against Plaintiff.

It is a basic pleading essential that a plaintiff attribute factual allegations of improper conduct to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims

18

where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff's allegations against Defendant Unknown Party contain no suggestion that the Unknown Party engaged in active improper conduct. They therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Palmer, Schooley, and Unknown Party will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court also will dismiss for failure to state a claim Plaintiff's retaliation claim against Defendant Stewart, as well as his claimed violations of due process, the Eighth Amendment, and the PREA. The Court will serve the remainder of the complaint against King, Martin, and Stewart.

An Order consistent with this Opinion will be entered.


Dated: November 8, 2017 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge