UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE REYES,

                Plaintiff,

v.

CARMEN PALMER, *et al.*,

                Defendants.

_____/

Case No. 1:17-cv-755

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC).  This matter is now before the Court on defendants King, Martin, and Stewart's Motion for summary judgment based on failure to exhaust (ECF No. 17).

### I.  Background

The Court previously noted that plaintiff's lawsuit involved claims against the following officials at the Michigan Reformatory (RMI): Warden Carmen Palmer; Deputy Warden Schooley; Captain King; Lieutenant Martin; Unknown Party (named as Sergeant Doe); and Unknown Stewart.  Opinion (ECF No. 10, PageID.87).  The only remaining defendants in this action are Capt. King, Lt. Martin, and Corrections Officer Stewart.  The Court summarized plaintiff's claims in pertinent part as follows

Plaintiff alleges that, on December 26, 2015, he went to dinner in the chow hall, proceeded through the food line, and received his dinner tray. However, when he sat down, he noticed that he had no eating utensil. Plaintiff got up to get a spork, but Defendant Stewart stopped him and asked what he was doing. Plaintiff explained that he either was not given or may have dropped his eating utensil. Stewart ordered Plaintiff to come over for a shakedown, to make sure that Plaintiff

1

was not trying to steal a set of utensils. Plaintiff responded, "I have no reason to steal anything from the chow hall." (Compl., ECF No. 1, PageID.11.)

Plaintiff contends that Defendant Stewart searched him roughly, and Plaintiff started to get upset. When searching Plaintiff's first leg, Stewart allegedly touched Plaintiff's testicle roughly. Plaintiff complained, saying, "can't you be a little more easier, and watch where you're touching me?" (*Id.*) After hearing Plaintiff's question, Defendant Stewart allegedly became even rougher in his search of the other leg, this time squeezing Plaintiff's testicles.

After Stewart finished the search, Plaintiff walked toward the chow line to get his spork. Defendant Martin, who had been watching Plaintiff's interaction with Stewart, walked up to Plaintiff and asked if he had a problem with the officer shaking him down. Plaintiff responded, "No, but I do have a problem with your officer squeezing my gonad area." (*Id.*) Defendant Martin replied, "If you have a problem with my officer shaking you down, you can leave the chow hall." (*Id.*) Plaintiff remained silent. When Plaintiff made no response, Defendant Martin repeated his statement and asked Plaintiff if he had a problem. Plaintiff again stood silent. Defendant Martin told Plaintiff that he was talking to him and ordered Plaintiff to answer. Plaintiff responded that he had already told Martin that Defendant Stewart had sexually assaulted him during the shakedown.

After making his statement, Plaintiff began to walk away to get his eating utensil. Lt. Martin ordered Plaintiff to stop, because he was not finished talking to Plaintiff. Plaintiff responded that he was finished talking and just wanted his spork so that he could eat his meal before it was cold. At that point, Defendant Martin stated, "Since you have a problem with my officer shaking you down, you can leave the chow hall now." (*Id.*, PageID.12.) Plaintiff asked, "[S]o you're going to deny me a meal, because I told you that Officer Steward [sic] grabbed my gonad?" (*Id.*) Lt. Martin responded, "YES I AM!" (*Id.*)

Plaintiff returned back to his cell without dinner, and he promptly began to write a grievance against Defendants Martin and Stewart. He claims that he was so upset, however, that he got some of the details of his grievance wrong. He filed the grievance on December 28, 2015. Plaintiff thereafter received notice that the grievance may fall under the scope of the Prison Rape Elimination Act (PREA), and it therefore had been referred for investigation and determination of the possible violation.

Defendant Captain King reviewed the grievance and conducted an investigation under the PREA. As he reported in the Step I grievance response, King reviewed the video footage of December 26, 2015, between 7:00 and 7:15 p.m., and interviewed Defendants Stewart and Martin, as well as another officer. (Ex. C to Compl., ECF No. 1-1, PageID.32.) King found that Plaintiff was pictured leaving his seat in the chow hall, being stopped by Stewart, and being patted down by Stewart. Nothing untoward was visible on the video, and Plaintiff did not appear

2

to react to any part of the search. Plaintiff proceeded to the chow line, where he was stopped by Defendant Martin. During the conversation with Martin, Plaintiff appeared to become upset and subsequently left the chow hall.  (*Id*.)

After conducting an investigation, King concluded that Plaintiff's grievance was unsubstantiated and denied the grievance on February 1, 2016. (*Id*., PageID.32-33.) That same date, King wrote a Class II misconduct against Plaintiff, charging him with interference with the administration of rules for filing a false claim against a staff member. At the initial review of the misconduct charge, Plaintiff claimed that the date of the incident listed on his grievance was wrong, and therefore Defendant King had reviewed the wrong videotape. Having heard Plaintiff's information about the mistaken date, Sgt. John Doe (Defendant Unknown Party) advised Plaintiff that he should beat the misconduct ticket because the body of the ticket was wrong.

Plaintiff was called out for a hearing with Defendant Martin the next day. Plaintiff objected to Defendant Martin hearing the misconduct charge, because Martin was involved in the subject matter and because Plaintiff had filed a grievance against Martin, rendering Martin biased. Defendant Martin nevertheless insisted on presiding over the hearing. When Plaintiff revealed that the body of the ticket was wrong, Martin postponed the hearing. On February 4, 2016, Martin reheld the hearing, over Plaintiff's objection that Martin was violating his right to due process. Defendant Martin revealed that he had talked to Defendant King about the typographical error in the date of the incident. But Martin said that he was nevertheless going to find Plaintiff guilty for lying about an officer. He sanctioned Plaintiff to 5 days' toplock and 30 days' loss of privileges.  As a result of the guilty determination, Plaintiff wrote a grievance against Defendants King and Martin for staff corruption in denying him due process. . . .

Plaintiff also complains that Defendant King told a correctional officer to remove Plaintiff from his position as a block representative before Plaintiff had been found guilty of the misconduct charge. Toward the end of the grievance process, Plaintiff informed Defendant Schooley that he had been denied due process by Defendant Martin's decision to preside over the misconduct. Defendant Schooley responded that Defendant Martin had improperly reviewed the misconduct, but he asked Plaintiff why he had not spoken with Schooley sooner. Plaintiff responded that he had been told not to talk to anyone under the PREA standards.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

Opinion (ECF No. 10, PageID.87-90).

3

Plaintiff's complaint included the following counts.  In Count I (Fourteenth Amendment Violation), plaintiff alleged that all defendants violated his due process rights in a biased misconduct hearing. The Court found no due process violations.  Opinion at PageID.92-94. In Count II (First Amendment Violation), plaintiff appears to have alleged that defendants retaliated against him.  The Court dismissed all claims of these claims except (1) that Lt. Martin retaliated against plaintiff by ordering him out of the chow hall when plaintiff complained about a sexual assault; and (2) that Capt. King retaliated against plaintiff for filing a grievance against CO Stewart and Lt. Martin by issuing a misconduct charge against him.  Opinion at PageID.97.  While the Court also served the complaint on CO Stewart, the opinion is silent with respect to the claim alleged against Stewart.  *Id.* at PageID.105.[1]

The Court dismissed plaintiff's claims against defendants Palmer, Schooley, and the unknown Sergeant, as well as his claims for violation of due process, the Eighth Amendment, and PREA.  *See* Order (ECF No. 11). This matter is now before the Court on defendants' King, Martin, and Stewart's motion for summary judgment for lack of exhaustion.

## II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

---

[1]   The Court found that plaintiff did not allege a retaliation claim against CO Stewart. *Id.* at PageID.94-96.  Even though plaintiff did not include counts against CO Stewart for claims under the Eighth Amendment or PREA for allegedly squeezing his genitals, the Court concluded that plaintiff failed to state a claim under the Eighth Amendment and that he could not bring a private cause of action under PREA. *Id.* at PageID.98-101, 102-103. Similarly, the Court found no Eighth Amendment violation with respect to depriving plaintiff of a meal. *Id.* at PageID.101-102.

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.       Failure to Exhaust

### 1.       Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"  *Jones*, 549 U.S. at 218.

### 2.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007).  A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control.  *Id.* at ¶ P.  If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff.  *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response,

or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3.    Discussion

Defendants have identified three grievances which could relate to plaintiff's claims: RMI-15-12-3045-17z ("3045"), RMI-15-12-3040-17c ("3040"), and RMI-16-02-0352-28e ("352").  Defendants' Brief (ECF No. 18, PageID.131-134).

In Grievance 3045, plaintiff complained that Lt. Martin ordered him to leave the dining hall after repeatedly asking plaintiff if he had an attitude about CO Stewart conducting a shakedown.  Plaintiff framed the issue as one of an alleged sexual assault, i.e., that CO Stewart grabbed and squeezed plaintiff's genitals.  *See* Grievance 3045 (ECF No. 18-2, PageID.160-161). There is no mention of retaliation in this grievance, which prison staff investigated as an alleged sexual assault by Stewart.  *Id*.  In his Step II appeal, plaintiff changed the issue by claiming retaliation and staff corruption because he was issued a misconduct.  *See* Grievance 3045 (Step II) (ECF No. 1-1, PageID.44).  The Step II Appeal was denied.  *Id.* (Step II response) (ECF No. 1-1, PageID.46).  In his Step III Appeal, plaintiff did not mention his alleged sexual assault against CO Stewart, which was the basis of the grievance.  Rather, in this appeal, plaintiff claimed that RMI "refuses to acknowledge their wrong doing and is trying to cover up wrong doing by their officers," that he "layed [sic] out my facts and I've shown I was retaliated against by Capt King and LT Martin for bringing an [sic] sexual assault to the forefront."  *Id*. (Step III Appeal) (ECF No. 18-2, PageID.158).  The MDOC denied the Step III Appeal stating in pertinent part "[u]pon examination it has been determined that your issue was in fact considered and reviewed by the PREA office." *Id*. (Step III response) (ECF No. 18-2, PageID.157).

In order to properly exhaust the MDOC's grievance procedures, "[a] prisoner must raise each of his claims for the first time at Step I." *Bean v. Tribley*, No. 2:11-cv-427, 2013 WL 3755768 at *2 (W.D. Mich. July 16, 2013).  Defendants point out that plaintiff first mentioned alleged retaliation in his appeals filed in Steps II and III.  As discussed above, the MDOC's prison policy "specifically requires that dates, times, places and names of all those involved in the issue being grieved are to be included in a step I grievance." *Little v. Unknown McDonald*, No. 2:06-cv-195, 2008 WL 4425872 at *5 (W.D. Mich. Sept. 26, 2008).  Here, plaintiff did not include any retaliation claims in his grievance filed at Step I.  Plaintiff's Grievance 3045 did not properly exhaust any retaliation claims against defendants. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, all defendants are entitled to summary judgment on this claim.

In Grievance 352, plaintiff complained that Capt. King and Lt. Martin conspired against him for a grievance that he wrote and that they should be disciplined and terminated for the conduct.  Grievance 352 (Step I) (ECF No. 18-2, PageID.172).  Plaintiff stated: that Capt. King investigated his PREA claim; that Lt. Martin was a witness in that claim; that Capt. King wrote a Class II misconduct against plaintiff; that Lt. Martin was the hearing officer for that misconduct (which Martin witnessed); and that Lt. Martin violated his right to fair hearing because according to another inmate, Lt. Martin was "going to teach [plaintiff] a lesson to mess with his comrades." *Id*.  Grievance 352 was rejected as untimely.  *See* Grievance Rejection Letter (ECF No. 18-2, PageID.173).  The rejection was upheld at both the Step II and Step III Appeals.  *See* Step II response (ECF No. 18-2, PageID.171); Step III decision (ECF No. 18-2, PageID.169).  Based on this rejection, plaintiff did not properly exhaust his claims.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, Capt. King and Lt. Martin are entitled to summary judgment on this claim.

Grievance 3040 involves plaintiff's claim that CO Stewart inappropriately touched plaintiff's private area while shaking him down and that he felt "violated in a sexual manner." Grievance 3040 (ECF No. 1-1, PageID.26).  This grievance did not make any claim of retaliation. *Id.*  In response to this grievance, the MDOC performed an investigation of CO Stewart's actions, including review of video footage from a surveillance camera in the chow hall.  Step I Response (ECF No. 18-2, PageID.167). The response also noted that plaintiff's PREA allegations "were unfounded." *Id.*  The Step II grievance appeal response noted that plaintiff claimed to be the victim of a sexual assault at the hands of CO Stewart on December 26, 2015.  Step II Appeal response (ECF No. 1-1, PageID.49).  The response also noted that plaintiff's Step II Appeal added claims of retaliation b Capt. King and Lt. Martin.  *Id.*  The Step III grievance decision denied plaintiff's Step III Appeal, finding that there was not evidence found in the investigation to support plaintiff's alleged PREA claim.  Step III decision (ECF No. 18-2, PageID.163). It appears that plaintiff properly exhausted an Eighth Amendment claim against CO Stewart for allegedly squeezing his genitals.  However, the Court determined on initial screening that plaintiff's allegations were insufficient to state an Eighth Amendment claim against CO Stewart and that he has no claim under PREA.  There is no evidence that plaintiff exhausted any other claim against CO Stewart arising from the allegations of the complaint.  Accordingly, CO Stewart is entitled to summary judgment.

**IV.    Recommendation**

For these reasons, I respectfully recommend that defendants' motion for summary judgment on the basis of exhaustion (ECF No. 17) be **GRANTED** and that this action be **TERMINATED**.

Dated:  June 11, 2018                                    /s/ Ray Kent
                                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).